IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MARGARITA GONZALEZ,            )
                               )
     Plaintiff,                )
                               )
                               )    CIV-14-291-D
v.                             )
                               )
STATE OF OKLAHOMA ex rel.      )
DEPARTMENT OF CORRECTIONS, et al., )
                               )
     Defendants.               )

# REPORT AND RECOMMENDATION

Plaintiff, a Texas resident who appears with counsel, brings this civil action pursuant to 42 U.S.C. § 1983. In her Amended Complaint filed March 31, 2014, Plaintiff alleges various constitutional deprivations related to her previous confinement at the Mabel Bassett Correctional Center ("MBCC"). The Defendants named in the Amended Complaint are State of Oklahoma ex rel. Department of Corrections ("ODOC"), former ODOC Director Justin Jones, who is sued in his official and individual capacities, former MBCC Warden Millicent Newton-Embry, who is sued in her official and individual capacities, ODOC Director Robert Patton, who is sued in his official capacity, MBCC Warden Rickey Moham, who is sued in his official capacity, and "John Does 1-10."

Defendants ODOC, Jones, Newton-Embry, Patton, and Moham have moved to dismiss the cause of action against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and

1

Plaintiff has responded to the Motion to Dismiss. The moving Defendants have filed Defendants' Reply to Plaintiff's Response.

The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the moving Defendants' Motion to Dismiss be granted and the claims alleged in count two of the Amended Complaint be dismissed without prejudice as to Defendants Jones, Newton-Embry, Patton, and Moham in their official capacities, as to ODOC, and as to Defendants Jones, Newton-Embry, Patton, and Moham in their individual capacities.

I. Standard of Review

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991). To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to make his or her "claim for relief . . . plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007. While "[t]echnical fact pleading is not required . . . the complaint must still provide enough factual allegations for a court to infer potential victory." Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008). If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible." Robbins v. Oklahoma ex rel. Dep't of Human Servs., 519 F.3d 1242, 1247 (10th Cir.

2008)(quoting Twombly, 550 U.S. at 570). Under this standard, the plaintiff's well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the nonmoving party. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

II. Plaintiff's Claims

In her Amended Complaint, Plaintiff alleges in count one that "Defendants and/or their agents" were negligent in providing medical screening and medical care to Plaintiff during her confinement at MBCC. As factual support for this claim, Plaintiff alleges that in October 2010 her "medical providers" at MBCC determined that Plaintiff should undergo surgery to repair a hernia, that the operation was performed and Plaintiff was hospitalized following the surgery for one week, that she then returned to the MBCC infirmary and was "placed back in general population one day after her return to the infirmary," and that she was "not provided the recommended wheelchair or the prescribed antibiotics." Amended Complaint, at 3.

She requested medical treatment but was told to "walk and stop being lazy," and a week later she was examined by " a medical provider" who discovered a "considerable mass on her lower right side." Plaintiff was seen by "the facility doctor" who "injected her with a syringe three times to remove liquid from the mass area," and she was then returned to the general population with antibiotic medication. The next morning she discovered the places where the injections occurred were "leaking feces and blood."

She was then "transported outside the facility to Lindsay Municipal Hospital," the place where her initial surgery had been performed, for further treatment. The "doctor that

3

performed the initial surgery" determined that Plaintiff needed to be transported to Mercy Hospital "where another surgery was performed." She remained hospitalized for a week following this operation, and she was then returned to Lindsay Municipal Hospital "until March of 2011, when it was determined that she would require [a third] surgery to correct the error of the Mabel Bassett doctor who performed the initial surgery. Upon completion of this Fistula Repair, [Plaintiff] remained at Mercy Hospital until March 20, 2011, when she was returned to Lindsay Municipal Hospital. On March 29, 2011, she was then returned to [MBCC]." Amended Complaint, at 4. In April 2011, she was placed in a medical pod at MBCC where she improved "until another bulge started to form on her stomach in June of 2011" and she later "fell over an obstacle in her cell door" in July 2011.

She sought treatment from "Nurse Shipley" who assisted Plaintiff in seeing a "doctor for x-rays" which were "taken that week" but she was not given the x-ray results "for roughly three weeks," and the "doctor advised [Plaintiff] her muscles were merely strained and she should continue to take the ibuprofen." Amended Complaint, at 5. Three weeks later, she requested medical treatment, Dr. Nemri at Lindsay Municipal Hospital was contacted, and he requested Plaintiff be transported back to the Lindsay Municipal Hospital, where she saw a consultative examiner, Dr. Magness, who "informed [Plaintiff] she would ultimately need abdominal wall reconstruction" and she is "currently awaiting surgery to repair the damage created by the medical providers at [MBCC]." Amended Complaint, at 5.

Plaintiff states that she submitted a Notice of Tort Claim on Defendant Newton-Embry on or about January 3, 2012, and the claim was denied by operation of law on or

4

about April 3, 2012.

In count two, Plaintiff alleges that "Defendants" violated her Eighth Amendment right to adequate medical care and conditions of confinement "when Defendants employees and/or agents, including John Does 1-10, were deliberately indifferent to her serious medical needs" and also violated her Fourteenth Amendment substantive due process rights. Plaintiff alleges that the constitutional violations resulted from "various 'policies and customs,'" including the "Defendants deliberately failed to appropriately select, screen, train and supervise its staff in a constitutionally permissible manner" and the "Defendants were deliberately indifferent to the inmates' serious medical needs." For these alleged claims, Plaintiff seeks compensatory and punitive damages.

III. Eleventh Amendment Immunity

States, state officials named in their official capacities, and "arms of the State" are entitled to immunity under the Eleventh Amendment unless the State has waived its immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)(holding neither a State nor its officials acting in their official capacities are "persons" under § 1983); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)(holding "the principle of sovereign immunity is a constitutional limitation on the federal judicial power," but that a State's sovereign immunity may be waived by an unequivocal expression of waiver).

Although in some circumstances Congress may abrogate a State's sovereign immunity by legislation, 42 U.S.C. § 1983 does not abrogate the sovereign immunity of a State. See Quern v. Jordan, 440 U.S. 332, 345 (1979)(§1983 does not waive States' sovereign

immunity). Oklahoma has not consented to Plaintiff's suit against the state or its state officials in their official capacities. See Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 589 (10th Cir. 1994)("Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court."). Thus, as Plaintiff has conceded in her responsive pleading, the Eleventh Amendment bars Plaintiff's § 1983 claims in count two seeking damages from Defendant ODOC and from Defendants Jones, Newton-Embry, Patton, and Moham in their official capacities.[1]

IV. Personal Participation Claims

In count two, Plaintiff seeks damages under § 1983 against Defendants Jones and Newton-Embry in their individual capacities. Defendants Jones and Newton-Embry assert in their Motion to Dismiss that Plaintiff has not alleged the requisite personal participation by these Defendants in the § 1983 claims.

It is clear from the allegations in the Amended Complaint against Defendants Jones and Newton-Embry that these Defendants are sued only in their supervisory capacities. Plaintiff alleges that Defendant Jones is "ultimately responsible for all aspects of the agency, including . . . personnel, training, budgeting, and overall operations of the agency" in his capacity as the former Director of ODOC. Amended Complaint, at 1. Plaintiff alleges that

---

[1]Although "a suit for prospective relief against state officials named in their official capacities, based upon an ongoing violation of federal law, is not considered an action against the state within the meaning of the Eleventh Amendment," Muscogee (Creek) Nation v. Okla. Tax Comm'n, 611 F.3d 1222, 1234 (10th Cir. 2010), Plaintiff has not alleged an ongoing violation of federal law).

6

Defendant Newton-Embry is "responsible for the operation of the facility" in her capacity as MBCC's former Warden. In conclusory terms, Plaintiff alleges that "Defendants failed to appropriately select, screen, train and supervise its [sic] staff in a constitutionally permissible manner" and "Defendants were deliberately indifferent to the inmates' serious medical needs" and "had a policy or custom [of] failing to provide adequate medical care." This is the extent of the allegations against Defendants Jones and Newton-Embry.

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court determined that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. This standard is violated if the prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Self v. Crum, 439 F.3d 1227, 1231 (10th Cir. 2006)(quoting Farmer, 511 U.S. at 837). A plaintiff claiming that prison officials have been deliberately indifferent to the prisoner's medical needs must prove two elements. The prisoner must show that, objectively, the inmate's medical needs were "sufficiently serious," and, subjectively, the prison official acted with a "sufficiently culpable state of mind" such that the official knew of and disregarded an excessive risk to inmate health or safety Id. at 1230-1231.

Plaintiff alleges Defendants Jones and Newton-Embry are liable for failing to train or adequately supervise prison officials and medical staff at MBCC and, apparently, at private hospitals where Plaintiff was treated as well. But a plaintiff cannot establish liability under

7

§ 1983 against state officials merely by "'show[ing] the defendant was in charge of other state actors who actually committed the [constitutional] violation. Instead, . . . the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights.'" Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010)(quoting Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). See Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997)("Individual liability under §1983 must be based on personal involvement in the alleged constitutional violation."); Jenkins v. Wood, 81 F.3d 988, 994-995 (10th Cir. 1996)("[P]laintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation.")(internal citation omitted).

In this circuit, "government officials may [still] be held responsible for constitutional violations under a theory of supervisory liability." Pahls v. Thomas, 718 F.3d 1210, 1225 (2013). "A plaintiff may therefore succeed in a § 1983 suit . . . against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained-of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" Id. (quoting Dodds, 614 F.3d at 1199).

To state a plausible claim against a state supervisory official under this standard, a plaintiff must "'make clear exactly *who* is alleged to have done *what* to *whom*, as

8

distinguished from collective allegations.'" Id. (quoting Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011)). "When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights." Id. at 1225-1226. "Rather, it is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." Id. at 1226 (quoting Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 532 (10th Cir. 1998)).

Throughout the Amended Complaint, Plaintiff collectively names the "Defendants" as liable for undifferentiated infringements of her rights without so much as a single allegation of a specific action taken by Defendant Jones or Defendant Newton-Embry. In response to Defendants Jones and Newton-Embry's Motion to Dismiss them from the action for failure to state a plausible claim against them in their individual capacities, Plaintiff continued to allege only the collective liability of the "Defendants" for vague "failure[s] to adequately screen Plaintiff" and "failure[s] to adequately train their employees." Plaintiff's Response. Plaintiff does not refer to a single policy or procedure or even allege exactly what actions were taken by particular prison officials that caused a constitutional deprivation. Plaintiff's pleadings set forth a vague recitation of facts followed by conclusions of constitutional violations without any definitive connection between the two. Nor is there any affirmative link alleged between the facts, conclusions, and any actions taken by Defendants Jones or Newton-Embry, either as a matter of direct participation or by way of the

9

implementation of a policy causing a particular constitutional deprivation and accompanied by the requisite state of mind. Particularly with respect to the Plaintiff's allegations concerning multiple surgeries at two private hospitals, Plaintiff's allegations fail to indicate in what manner any prison official, much less a supervisory official, would be liable under § 1983, or, for that matter, negligent, as alleged in count one, with respect to any care or lack of care Plaintiff received in those hospitals.

Plaintiff requests leave to file a second amended complaint in order to cure any deficiencies in her pleading as to the § 1983 claims against Defendants Jones and Newton-Embry in their individual capacities. In light of this request, the undersigned recommends that the request to file a second amended complaint be granted and that the Motion to Dismiss by Defendants Jones and Newton-Embry concerning Plaintiff's individual-capacity claims be denied without prejudice to its renewal following Plaintiff's filing of a second amended complaint.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Motion to Dismiss Plaintiff's § 1983 claims against Defendant ODOC and against Defendants Jones, Newton-Embry, Patton, and Moham in their official capacities be GRANTED and that the § 1983 claims alleged in the Amended Complaint be DISMISSED with prejudice as to Defendant ODOC and Defendants Jones, Newton-Embry, Patton, and Moham in their official capacities. It is further recommended that Defendants Jones and Newton-Embry's Motion to Dismiss Plaintiff's § 1983 claims against them in their individual capacities be DENIED

without prejudice to its renewal following the filing of a second amended complaint and that Plaintiff's request to file a second amended complaint be GRANTED. Plaintiff is given until     July 16th    , 2014, to file a second amended complaint.

The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by           July 16th , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation partially disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this    26th    day of                             June, 2014.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE